**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California, 91361
Telephone:    (805) 270-7100
Facsimile:     (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL WALCOFF on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>INNO FOODS USA, INC., COSTCO WHOLESALE CORPORATION,<br>a Washington corporation and DOES 1 through 20, inclusive,<br><br>                    Defendants. | **CASE NO.: 3:22-cv-01485-MMA-AHG**<br>Hon. Michael M. Anello<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1.  **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200,** *et seq.*<br><br>2.  **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17500,** *et seq.*<br><br>3.  **VIOLATION OF CALIFORNIA CIVIL CODE § 1750.** *et seq.*<br><br>4.  **UNJUST ENRICHMENT;**<br><br>5.  **BREACH OF EXPRESS WARRANTY;**<br><br>6.  **VIOLATION OF CONSUMER FRAUD LAWS;**<br><br>7.  **NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Carol Walcoff ("Plaintiff") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and the investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by Inno Foods Usa, Inc. ("Defendant" or "Inno Foods") and Costco Wholesale Corporation, ("Costco") (collectively, "Defendants") as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices of Inno Foods with respect to the marketing, advertising, labeling, and sales of its keto snack product line including Keto Coconut Cluster and Dark Chocolate Keto Nuggets (the "Products").

2.      Inno Foods recognizes consumers are increasingly health conscious.[1]  "Keto" was the most Googled food-related term in 2020[2]. Within the bars, cereals, baking mixes, cookies and snacks category, dollar sales for "keto" products have grown over 21% in the past year[3].

3.      To capitalize on these market trends, Inno Foods developed, marketed and distributed a purportedly "keto" snack product with packaging that highlights "keto-friendly" ingredients such as almonds, pecans and pumpkin seeds.

4.      As part of a scheme to make the Products more attractive to consumers, boost sales, and ultimately increase profits, Inno Foods uses terms such as "keto-friendly" and "4g net carbs."



---

[1] "We specialize in compiling concepts based on country or origin, marketing of healthy and trendy food products and we are specialists in the field of the organic glutenfree/lactosefree range and the vegan range." https://www.innofoodcompany.com/?lang=en (last viewed 8/15/2022).

[2] https://www.forbes.com/sites/meimeifox/2021/09/23/3-food-companies-targeting-the-growing-keto-diet-market/?sh=616474cb6390 (last viewed 8/15/2022)

[3] https://www.forbes.com/sites/meimeifox/2021/09/23/3-food-companies-targeting-the-growing-keto-diet-market/?sh=616474cb6390 (last viewed 8/15/2022)

FIRST AMENDED CLASS ACTION COMPLAINT

5.      The use of these terms and natural imagery is designed to, and does, induce consumers, such as Plaintiff and the members of the putative classes, into believing that the snacks comport with a ketogenic diet.

6.      "Keto claims are implied low carbohydrate claims."[4]  Carbohydrates (also known as "carb" or "carbs") come in three different forms:  (1) starches; (2) fiber; (3) sugar.[5]  Starches and fiber are considered "complex" carbohydrates, while sugar is known as a "simple" carbohydrate.[6]

7.      However, if you're on a keto or low-carb diet, simple carbohydrates (sugars) are "off the table."[7]  Defendant's labeling, advertising, and marketing campaign is false and misleading, particularly to consumers seeking out low sugar (particularly no added sugar) and/or keto compliant food products, because: (1) Inno Foods' Coconut Keto Clusters product contains two different types of added simple carbs (sugars)—namely, cane sugar and brown rice sugar; (2) Inno Foods' Dark Chocolate Keto Nuggets product contains two different two different types of added simple carbs (sugars)—namely, cane sugar and tapioca syrup; and (3) the Products are high in carbohydrates for a balanced keto diet.[8]

8.      When purchasing the Products, Plaintiff and reasonable consumers such as herself considered and relied on Defendant's misrepresentations that the products were "keto."  Plaintiff would not have purchased this product if she had known that Defendant's representations were false and misleading.  Plaintiff and the Classes paid a premium for the Products over comparable snacks that did not purport to be "keto."  Plaintiff would not have purchased the Products had she known that Defendants purposefully added simple carbs (sugars), which are contraindicated on the keto diet to Defendants' Products.  Plaintiff suffered an injury by purchasing the sugar-added Products at inflated prices.  Plaintiff did not receive a keto product; rather, she received Products sweetened with cane sugar, and/or brown rice sugar, and/or tapioca syrup.

9.      Defendant's conduct of falsely marketing, advertising, labeling, and selling the Product constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, because, among other things, it

---

[4] https://ask.usda.gov/s/article/askFSIS-Keto (last viewed 11/16/22).
[5] https://my.clevelandclinic.org/health/articles/15416-carbohydrates (last viewed 11/16/22).
[6] Id.
[7] https://www.cleaneatingmag.com/clean-pantry/keto-sweeteners-cheat-sheet/ (last viewed 11/14/2022).
[8]   https://www.fda.gov/food/new-nutrition-facts-label/added-sugars-new-nutrition-facts-label   (last viewed 11/16/22) ("Added sugars include sugars that are added during the processing of foods," and [t]hey do not include naturally occurring sugars that are found in milk, fruits, vegetables.").

misrepresents the characteristics of goods and services. As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Defendant's Products (the "Class"). Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in California of Defendant's Product (the "California Class").

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     The Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965(b), (d). This Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and because Defendant systematically and continually conduct business throughout the State of California, including marketing, advertising, and sales directed to California residents.

12.     Defendant regularly conduct business in San Diego County, because Plaintiff purchased the subject product is San Diego County.

13.     Defendant have distributed, marketed, advertised, labeled, and sold the Products in this District. Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendant is deemed to reside in this District. As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendant is deemed to reside in this District and under 28 U.S.C. §1391(b)(2), because Defendant conducts business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES

**Plaintiff**

14.     Plaintiff is a citizen of California and an individual consumer.

15.     During the Class Period, Plaintiff's medical doctor warned her that her blood triglyceride levels were dangerously high.

16.     Triglycerides are a "type of fat that circulates in your blood."[9]

---

[9]   https://www.nhlbi.nih.gov/health/high-blood-triglycerides#What-are-the-symptoms (last viewed 11/14/22).

17.     The human body makes triglycerides and also "gets them from the foods you eat."[10]  Simple carbs can be converted into triglycerides.[11]

18.     While the human body "needs some triglycerides for good health," high levels of blood triglycerides "can raise your risk of," among other things, "heart disease and stroke."[12]

19.     Limiting the consumption of added sugars can lower blood triglycerides to a healthy range,[13] and can also assist in weight loss.[14]

20.     To assist Plaintiff in lowering her elevated blood triglycerides, Plaintiff's medical doctor advised her to drastically reduce her carbohydrate intake—particularly her added sugar intake—,[15] and to lose some excess bodyweight.

21.     Plaintiff selected the keto eating pattern because, as discussed in greater detail below, keto involves heavily "restricting the number of carbohydrates and sugar you consume,"[16] which was in alignment with her doctor's medical counsel regarding lowering her dangerously high blood triglyceride levels.

22.     A "well-formulated" ketogenic diet is composed of less than 20-50 grams of net total carbohydrate, per day.[17]  The net carbohydrate count in a food or meal excludes fiber and sugar alcohols present in the food or meal.[18]  This allows Defendant to conceal from consumers the true carbohydrate effect of their products.

23.     When an individual reduces carbohydrate intake within this general threshold of 20-50 net grams per day, "the body will enter a metabolic shift called ketosis."[19]  In ketosis, instead of using glucose for fuel (from, for example, added dietary sugars), the body "will use its own at stores and the ketones produced

---

[10] Id.
[11] https://www.healthline.com/nutrition/13-ways-to-lower-triglycerides (last viewed 11/14/22)
[12] https://www.nhlbi.nih.gov/health/high-blood-triglycerides#What-are-the-symptoms (last viewed 11/14/22).
[13] https://www.mayoclinic.org/diseases-conditions/high-blood-cholesterol/in-depth/triglycerides/art-20048186 (last viewed 11/14/22) ("Simple carbohydrates, such as sugar and foods made with white flour or fructose, can increase triglycerides."); https://www.healthline.com/nutrition/13-ways-to-lower-triglycerides (last viewed 11/14/22) ("Minimizing added sugar in your diet from sugary beverages and sweets can reduce you blood triglyceride levels.").
[14] https://www.google.com/amp/s/health.clevelandclinic.org/sweet-tooth-spells-trouble-heart/amp/ (last viewed 11/14/22) ("The more sugar you eat, the more insulin you secrete, and the more fat you build up.").
[15] https://blog.thefastingmethod.com/hyperinsulinemia-hypertriglyceridemia-t2d-29/ (last viewed 11/15/22) (explaining that reducing dietary carbohydrates "effectively lowers blood triglycerides").
[16] https://healthinsider.news/how-much-sugar-can-you-have-on-keto-diet-en/ (last viewed 11/14/22).
[17] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6472268/ (last viewed 11/15/22).
[18] Id.
[19] https://healthinsider.news/how-much-sugar-can-you-have-on-keto-diet-en/ (last viewed 11/14/22).

FIRST AMENDED CLASS ACTION COMPLAINT

1    from this process" as fuel.[20]

2           24.    Individuals can test their ketone levels in various ways, including "by using home blood or
3    urine tests."[21]  The "hallmark of nutritional ketosis is blood ketone levels of 0.5 to 3 mg/dL [milligrams per
4    deciliter]."[22]

5           25.    Plaintiff monitored her progress towards her health goals on the keto diet by using at-home
6    ketones testing kits and by tracking her weight loss.

7           26.    For about 3 months, Plaintiff experienced success on the keto diet.  Plaintiff checked her ketone
8    levels about two times per day.  Plaintiff also lost some of her excess weight eating the keto way during these
9    3 months.

10          27.    Plaintiff shifted her food purchasing habits, becoming a keto-minded consumer.  Plaintiff
11   sought out foods with no added simple carbs (sugars) and low net carbohydrate count.

12          28.    During the Class Period, Plaintiff purchased the Products at Costco stores in Carlsbad,
13   Burbank, and Los Angeles.

14          29.    Prior to purchasing the Products, Plaintiff read, considered, and relied upon false and
15   misleading statements and images that were prepared by and/or approved by Defendants and their agents and
16   disseminated through the Products' packaging, as discussed in greater detail below.  For each purchase, Plaintiff
17   understood that she was paying for a keto snack and was deceived when she received a product that contained
18   added simple carbs (sugars) and a total carbohydrate count that included those hidden added simple carbs
19   (sugars).

20          30.    After beginning consuming Plaintiffs' sugar-added Products, Plaintiff began experiencing
21   difficulty maintaining a state of ketosis and her weight-loss halted.

22          31.    In the last two years, Plaintiff spent approximately three-hundred dollars ($300) purchasing the
23   Product for her personal consumption.

24          32.    Plaintiff suffered injury in fact because she relied on Defendants' packaging and labeling,
25   which was targeted to the keto-conscious consumer, like Plaintiff, seeking out no-sugar-added and low

26

27   _____
     [20] Id.
28   [21]  https://healthy.kaiserpermanente.org/health-wellness/health-encyclopedia/he.ketone-test.hw7738
     (last viewed 11/15/22).
     [22] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6472268/ (last viewed 11/15/22).

carbohydrate food products.  Plaintiff's keto diet and her underlying health goals were frustrated by Defendants' sugar-added Products.

33.     In addition, Plaintiff lost money and property as a result of the unfair, deceptive, untrue, and misleading advertising described here. Had Plaintiff known of the defective nature of the Products, she would not have purchased them.

34.     If Plaintiff were to encounter product information and advertisements for Defendants' Products, she could not rely on them.  However, Plaintiff would be willing to purchase products from Defendants in the future so long as Defendants produced a product without added simple carbs (sugars) and low carbohydrates that was actually "keto friendly".

**Defendants**

35.     Defendant Inno Foods is a Pennsylvania corporation. At all times relevant hereto, Inno Foods was in the business of distributing, marketing, promoting, and selling the Products described herein throughout the United States and in this District.  Thus, Inno Foods purposely directed its conduct toward this District and at all times relevant engaged in a continuous course of business in this District by selling thousands of its Products, including those sugar-added products marketed as "keto-friendly" and other varieties of consumer goods, in this District every year.

36.     Defendant Costco is an American multinational corporation which operates a chain of membership-only big-box retail stores. Defendant is a Washington corporation and is authorized to do business in California.

37.     Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 20 but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

38.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to Defendants, each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants represent and were in accordance with Defendants' official policy.

39.     At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

40.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants are in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## GENERAL ALLEGATIONS

### A.  Keto Diets

41.     In 2018, "What is keto?" was the number one searched health-related question, and the second in 2019.[23]

42.     The "ketogenic," also known as the keto diet, or keto, "is extremely strict."[24]  Keto originated as a dietary protocol used to help manage seizures in children with epilepsy.[25]  That's because both ketones and another chemical produced by the diet, called beta hydroxybutyrate, may help minimize seizures.[26]

43.     "While still prescribed for that purpose today [i.e., the management of seizure disorders],"[27] the diet is now considered a strategy to achieve a multitude of health goals, including but not limited to: providing weight loss; managing diabetes via controlling blood sugar levels; improving blood pressure; lowering cholesterol; and lowering blood triglycerides.[28]

44.     Normally, the body fuels itself by burning the glucose (sugar) that it gets from carbohydrates, such as grains, legumes, vegetables, fruits, and sugar.[29]  The body converts excess, unused glucose to

---

[23]   https://www.cnn.com/2019/12/12/health/health-questions-trending-google-2019-trnd/index.html, (last viewed 8/24/2022).
[24]  https://www.uchicagomedicine.org/forefront/health-and-wellness-articles/ketogenic-diet-what-are-the-risks (last viewed 11/15/22).
[25]   https://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/epilepsy/keto-diet-timeline.html (last viewed 11/15/22).
[26]   https://www.womenshealthmag.com/weight-loss/a19434332/what-is-the-keto-diet/(last viewed 8/24/2022)
[27]  https://www.nm.org/healthbeat/healthy-tips/nutrition/pros-and-cons-of-ketogenic-diet (last viewed 11/15/22).
[28]   https://www.nytimes.com/2020/01/02/style/self-care/keto-diet-explained-benefits.html (last viewed 11/15/22).
[29]   https://www.health.harvard.edu/staying-healthy/should-you-try-the-keto-diet (last viewed 8/24/2022);

a stored sugar called glycogen.[30]  When: (1) a person eliminates, or drastically limits, the consumption of carb\s; and (2) that person's body "runs out of [stored] glycogen to burn, [that person's body] switches over to burning stored fat."[31]  This metabolic state—i.e., when the "body burns fat for energy instead of glucose" or glycogen—is called Ketosis.[32]

45.     In the process of breaking down stored fat for energy, the liver "produces a compound called ketones," or ketone bodies.[33]  These ketones "become your body and brain's main source of energy."[34]

46.     The keto diet essentially aims to force your body into ketosis or a ketogenic state, where the body relies on ketone bodies for energy.[35]  When this happens, the body "becomes incredibly efficient at burning fat for energy."[36]  "Some people use at-home kits to test for ketones if they are on a ketogenic diet," to confirm that they have reached and/or are maintaining a state of ketosis.[37]

47.     The keto diet is high in fat, adequate in protein, and low in carbohydrate.[38]  The "original" keto diet consisted: 90% of calories from fat; 6% of calories from protein; and 4% of calories from carbohydrates.[39]  "Other variations have also cropped up with slightly different ratios of fat, carbs, and protein," but "[n]o matter whether you're following a classic keto diet or a modified version, the key is to remove nearly all carbohydrates from the diet."[40]  Otherwise, the body can be kicked out of a fat-burning, ketogenic state by reintroducing carbs into the system, because "the body will use [those carbs] preferentially for fuel."[41]  Even "one bite" of a carbohydrate-filled food can knock a person out of ketosis.[42]

---

[30]     https://www.webmd.com/multiple-sclerosis/keto-diet-and-multiple-sclerosis     (last     viewed 11/15/22).
[31] Id.
[32]     https://my.clevelandclinic.org/health/articles/24003-ketosis     (last     viewed     11/15/22); https://www.nm.org/healthbeat/healthy-tips/nutrition/pros-and-cons-of-ketogenic-diet     (last     viewed 11/15/22) ("Breaking down fats for energy is called ketosis.").
[33] https://my.clevelandclinic.org/health/articles/24003-ketosis (last viewed 11/15/22).
[34] Id.
[35]     https://www.health.harvard.edu/staying-healthy/should-you-try-the-keto-diet     (last     viewed 8/24/2022).
[36] https://www.healthline.com/nutrition/ketogenic-diet-101#what-it-is, (last viewed 11/15/22).
[37] https://medlineplus.gov/lab-tests/ketones-in-urine/ (last viewed 11/15/22).
[38] https://health.usnews.com/wellness/food/articles/keto-friendly-sweeteners (last viewed 11/15/22).
[39] Id.
[40] Id.
[41] https://www.menshealth.com/nutrition/a25222842/keto-cheat-day/ (last viewed 11/16/22).
[42] Id.

FIRST AMENDED CLASS ACTION COMPLAINT

48.     The modern, "typical" keto diet consists of:

- 70 percent or greater of your total daily calories from fat;

- 20 percent or fewer of your total daily calories from protein;

- 10 percent or fewer of your total daily calories from carbohydrates.[43, 44]

49.     To illustrate, "[w]hen you are on the Keto Diet, you drastically cut your carbs to only 20 per day. That's less than one apple!" said nutritionist Lisa Drayer.[45]

50.     A visual graphic of the keto diet is as follows:



51.     It is recommended that people eating the keto way limit their carbohydrates between 20 and 50 grams of net carbs per day.[46]   Total carbohydrates include all the different types of carbohydrate in a food or meal, meaning all starches, dietary fiber, and sugars.[47]   Net carbohydrates differ in that they only include carbohydrates that the body can fully digest into glucose, so the net carb count in a food or meal excludes fiber and sugar alcohols present in the

[43]     https://www.nytimes.com/2020/01/02/style/self-care/keto-diet-explained-benefits.html   (last viewed   11/15/22).   See also, https://www.uchicagomedicine.org/forefront/health-and-wellness-articles/ketogenic-diet-what-are-the-risks (last viewed 11/15/22).

[44] In contrast to the low carb focus of the keto lifestyle, the USDA recommends only 20-35 percent of total daily calories from fat, 10-35 percent of total daily calories from protein, 45-65 percent of total daily calories from carbohydrates.  Id.

[45]     https://www.cnn.com/2019/12/12/health/health-questions-trending-google-2019-trnd/index.html (last viewed 8/24/2022)

[46]     https://www.nytimes.com/2020/01/02/style/self-care/keto-diet-explained-benefits.html   (last viewed 11/15/22).

[47] https://www.medicalnewstoday.com/articles/326457#diabetes (last viewed 11/15/22).

FIRST AMENDED CLASS ACTION COMPLAINT

food or meal.[48]

52.     For a person following a keto diet and seeking the health benefits of ketosis,[49] the type of carbohydrate consumed is important.  Out of the 3 different types of carbohydrates (starches, fibers, sugars), sugar has the most profound impact on blood glucose levels.  "When you eat sugar, your blood glucose levels rise quickly."[50]

53.     Traditional, simple carbohydrate sweeteners (sugars) are unsuitable "for people wanting to stick to a keto diet."[51]  Ketosis "requires reducing sugar consumption, which can make it challenging to sweeten beverages, baked goods, sauces and dressings.  Fortunately, there are a variety of low-carb sweeteners that [a person eating the keto way] can enjoy."[52]

54.     A sweetener is "any ingredient that adds a familiar sweet taste to our foods."[53] Sweeteners can be "found in nature (e.g., honey, maple syrup), humans can make them from synthetic ingredients, or we can derive them from natural ingredients."[54]

55.     Genuine "keto-friendly" sweeteners will "contain virtually zero calories and have a glycemic index of zero, meaning that it doesn't elevate your blood sugar level when you ingest it."[55]

56.     The list of alternative keto-compliant sweeteners that Defendant Inno Foods could have used in its Products in lieu of high carb sweeteners includes, but is not limited to: stevia (0 grams net carbs); monk fruit (0 grams net carbs); xylitol (0 grams net carbs); and erythritol (0 grams net carbs).[56]

---

[48] Id.
[49] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8153354/#:~:text=Recent%20studies%20utilizing%20Low%2Dcarbohydrate,epigenetic%20profiles%2C%20alter%20the%20microbiome   (last viewed 11/16/22) (listing the many health benefits of a keto diet, including but not limited to: weight loss; reduction in inflammation; favorable alteration of the gut microbiome; supplementation for cancer treatments; and potential increase in longevity).
[50]     https://www.google.com/amp/s/health.clevelandclinic.org/sweet-tooth-spells-trouble-heart/amp/ (last viewed 11/16/22).
[51] https://www.medicalnewstoday.com/articles/keto-sweeteners#natural-sweeteners (last viewed 11/14/2022).
[52]     https://www.healthline.com/nutrition/keto-sweeteners#TOC_TITLE_HDR_1   (last   viewed 11/16/22).
[53] https://www.canr.msu.edu/news/trending-sweeteners (last viewed 11/16/22).
[54] Id.
[55] https://health.usnews.com/wellness/food/articles/keto-friendly-sweeteners (last viewed 11/16/22).
[56]     https://www.cleaneatingmag.com/clean-pantry/keto-sweeteners-cheat-sheet/   (last   viewed 11/15/22).

FIRST AMENDED CLASS ACTION COMPLAINT

57.     The list of high carb, keto-detrimental sugars, which are "out the window"[57] for someone living the keto lifestyle includes, but is not limited to: sucrose (4 grams net carbs per 1 teaspoon); cane sugar (4 grams net carbs per 1 teaspoon); brown sugar (3.8 grams net carbs per 1 teaspoon); coconut sugar (4 grams net carbs per 1 teaspoon); corn syrup (5.5 grams net carbs per 1 teaspoon); brown rice syrup (5.67 grams net carbs per 1 teaspoon); and tapioca syrup (3.16 grams net carbs per 1 teaspoon).[58, 59]

58.     Relevant to the instant matter, can sugar, brown rice syrup, and tapioca syrup are "sugar aliases" for keto-detrimental sugars.[60]

a.   Cane sugar, made from sugar cane, is identical to regular granulated sugar in terms of chemical composition, which includes identical molecules of sucrose.[61]

b.   Brown rice syrup is "very high in sugar" and offers "virtually no essential nutrients."[62]  Brown rice syrup is "made by cooking whole-grain rice, then using enzymes to break down the starch into the sugars maltose, maltotriose and a small amount of glucose.  After straining, the sweet liquid is boiled down into syrup."[63]

c.   Tapioca syrup is made from the cassava plant (a tuber), that is harvested, ground to a starch, and made into a syrup.  Commercially available tapioca syrup gets "virtually all" of its calories from sugar, is high in carbohydrate count, and offers very little nutritional value.[64]

59.     Moreover, the Products have a high caloric density which frustrate a keto diet.  For example, assuming a 2,000-calorie diet, as noted above, an individual would want to have between

[57]     https://health.clevelandclinic.org/what-is-the-keto-diet-and-should-you-try-it/ (last viewed 11/14/22).
[58]  https://konsciousketo.com/blogs/keto/the-many-names-of-sugar#slideone (last viewed 11/16/22); https://www.sweetenerproducts.com/understanding-added-sugars (last viewed 11/14/22).
[59] Net carb count calculated by Carbmanager.com (last viewed 11/17/22).
[60] https://www.gundersenhealth.org/health-wellness/eat/beware-added-sugar (last viewed 11/14/22).
[61]     https://www.healthline.com/nutrition/harmful-sweeteners#TOC_TITLE_HDR_2 (last viewed 11/14/22); https://www.americastestkitchen.com/cooksillustrated/how_tos/8891-natural-cane-sugar-vs-granulated-sugar (last viewed 11/14/22).
[62]     https://www.healthline.com/nutrition/brown-rice-syrup-good-or-bad#nutrition (last viewed 11/14/22).
[63]  https://www.drweil.com/diet-nutrition/food-safety/is-organic-brown-rice-syrup-safe/ (last viewed 11/14/22).
[64] https://www.mashed.com/193830/what-is-tapioca-syrup-actually-made-of/ (last viewed 11/16/22); https://www.livestrong.com/article/550281-what-are-the-health-benefits-of-organic-tapioca-syrup-vs-sucrose/ (last viewed 11/16/22).

5% and 10% of their calories derive from carbohydrates. Consumers who consume the Products would receive an inordinate calorical percentage from the snack.

**B.  The Products are Marketed Deceptively**

60.     American consumers are health conscious, and look for foods to keep a healthy diet and promote weight loss.  Consumers in the ketogenic diet demographic are particularly focused on finding foods that conform to the very specific requirements of the keto way of eating, especially avoiding problematic carbs.  Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

61.     Defendants realize that consumers are increasingly aware of the relationship between health and diet and, thus, understand the importance and value of descriptors and labels that convey to consumers certain "buzzwords" when considering whether to buy foods.

62.     Throughout the Class Period, Defendants engaged in, and Plaintiff and members of the Classes were exposed to, a long-term advertising campaign in which Defendants utilized various forms of media including, but not limited to, website, social media advertising, and print advertising on the Product's label. Defendants have consistently made certain representations in its labeling, advertising, and marketing that are false and misleading. To accomplish this, Defendants use an integrated, nationwide messaging campaign to consistently convey the deceptive and misleading message that the Products are conducive to a keto diet.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /





d.    **Inno Foods Coconut Keto Clusters marketed as** (images from Costco.com):[65]

- "KETO" in all capital letters on the front of the packaging;

- "KETO" in all capital letters on the back of the packaging;

- "Keto-friendly" on the back of the packaging;

- Images of Pecans, Almonds, Pumpkin Seeds, and Coconut on the front of the packaging;

- Image of Coconut on the back of the packaging;

- Promise of "NO FUNNY STUFF" in all capital letters on the back of the packaging;

- Excludes images of the *added* cane sugar and brown rice syrup.



e.    **Inno Foods Coconut Keto Clusters** (images from www.innofoods.shop):[66]

- Plaintiff repeats and realleges the misleading packaging descriptions set forth above;

- Defendant Inno Foods' website describes the Coconut Keto Clusters as having 1 *more* gram of *added* sugars (4 grams) than the 3 grams of added sugars listed on Costco.com.

---

[65] Plaintiff purchased the Products from Defendant Costco. https://www.costco.com/innofoods-organic-coconut-keto-clusters%2C-16-oz.product.100668068.html (last viewed 11/16/22).
[66] https://innofoods.shop/products/keto-clusters (last viewed 11/16/22).







f. **Inno Foods Dark Chocolate Keto Nuggets marketed as** (images from Costco.com):[67]

- "KETO" in all capital letters on the front of the packaging;

- "Keto-friendly" on the back of the packaging;

- Images of Pumpkin Seeds, Sunflower Seeds, Quinoa, Coconut, and a Dark Chocolate Shaving on the front of the packaging;

- Images of a Dark Chocolate Shaving, Coconut, Pumpkin Seeds, Sunflower Seeds, and Quinoa on the back of the packaging;

- Image of whole cocoa beans in their pod on the back of the packaging, adjacent to a graphic that reads "PURE" (in all capital letters) Belgian Premium Dark Chocolate;

- "IT'S IN THE CHOCOLATE!" in all-capital letters, above a description of "What is couverture chocolate?" that describes the chocolate as "a superior quality of dark chocolate containing a high percentage of cocoa solids and cocoa butters," without mentioning that the chocolate also contains *added* cane sugar;

- Excludes images of the *added* cane sugar and tapioca syrup.

C. **The Products Are Not Compatible with Ketogenic Diets**

63.     Inno Foods' Coconut Keto Clusters actually contain both *added* cane sugar and *added* brown rice syrup.  According to calculations, this product is 14% sugar by weight and contains nearly 1 teaspoon of added and natural sugars per serving.[68]

---

[67] Product images from Costco.   Plaintiff purchased the products from Defendant Costco. https://www.costcobusinessdelivery.com/innofoods-organic-dark-chocolate-coconut-keto-nuggets%2C-16-oz-.product.100408565.html (last viewed 11/16/22).
[68] https://www.ewg.org/foodscores/products/677210091366
InnofoodsCoconutKetoClustersWithOrganicPecansAlmondsPumpkinSeedsPecansAlmondsPumpkin Seeds/ (last viewed 8/24/2022)

1
2
3
4
5
6
7
8
9
10



11      64.     Likewise, the Inno Foods Dark Chocolate Keto Nuggets contains both *added* cane

12  sugar and *added* tapioca syrup.

13
14
15
16
17
18
19
20
21
22
23

24      65.     Defendants' "KETO"-centric messaging, at a minimum, is conveyed at the point of

25  purchase on the Products' packaging and labeling. Thus, all consumers are exposed to the same

    message whether viewed on the internet or on the label.

26      66.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness

27  of food and beverage labeling claims, especially at the point of sale.  Consumers would not know the true

28  nature of the ingredients or the details of the manufacturing process merely by reading the ingredient label;

their discovery requires investigation beyond the grocery store and knowledge of food chemistry as well as internal manufacturing habits beyond that of the average consumer.  Thus, reasonable consumers must, and do, rely on food companies such as Defendants to honestly report the nature of a food's qualities and ingredients, and food companies such as Defendants intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

67.    Defendants unscrupulously capitalize on consumers' heightened demand for healthy, "keto-friendly" products by deceptively labeling, advertising, and marketing the sugar-added Products.

68.    As set forth in the chart below, the Products cost more than comparable products that do not purport to be "KETO" or "keto-friendly"

| Product | Product Price[69] | Price Per Serving | Premium Paid Per Serving |
|---|---|---|---|
| Inno Foods Coconut Keto Clusters ("Coconut") | $13.99 | $0.87 | N/A |
| Inno Foods Dark Chocolate Keto Nuggets ("Chocolate") | $14.89 | $0.93 | N/A |
| Kirkland Signature Cashew Clusters with Almonds and Pumpkin Seeds | $12.99 | $0.41 | Coconut: $0.46 Chocolate: $0.52 |
| Quaker Chewy Granola Bars, Variety Pack | $11.99 | $0.20 | Coconut: $0.67 Chocolate: $0.73 |
| KIND Mini Bars Variety Pack | $21.49 | $0.60 | Coconut: $0.27 Chocolate: $0.33 |
| Quaker Simply Granola | $11.79 | $0.20 | Coconut: $0.67 |

_____

[69] The price listed for Inno Foods' Dark Chocolate Keto Nuggets is from Amazon.com because this Product was unavailable at Costco.com at the time of drafting this First Amended Complaint.  All other prices listed are from Costco.com.  (both websites last viewed 11/17/22).

| | | | |
|---|---|---|---|
| Cereal, 2-pack | | | Chocolate: $0.73 |
| Kirkland Signature Trail Mix | $14.99 | $0.25 | Coconut: $0.62 |
| | | | Chocolate: $0.68 |
| Hoody's Harvest Grove Trail Mix, 2-pack | $34.99 | $0.55 | Coconut: $0.32 |
| | | | Chocolate: $0.38 |

## **TOLLING OF THE STATUTE OF LIMITATIONS,**
## **FRAUDULENT CONCEALMENT, EQUITABLE TOLLING,**
## **AND CONTINUING VIOLATIONS**

69.     Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

70.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

71.     Because of the self-concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

72.     Defendants continue to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct.  Therefore, Plaintiff and the Classes submit that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of any Class purchased the Products constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

73.     Defendants are estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

74.     Defendants' conduct was and is, by its nature, self-concealing.  Still, Defendants, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively have foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts.

75.      By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

76.      Plaintiff brings this action individually and on behalf of all other persons similarly situated.  The Classes that Plaintiff seeks to represent comprise:

**California Class**
All persons in California who purchased the Products for personal or household use, and not for resale or distribution purposes at any time between August 25, 2018 until the date of judgment in this action.  Specifically excluded from this Class are Defendants; the officers, directors, or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants (California Class).  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "California Class").

**National Class**
All persons in the United States who purchased the Products for personal or household use, and not for resale or distribution purposes from August 25, 2018, until the date of judgment in this action for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendants; the officers, directors, or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants ("National Class").  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

**Consumer Protection Class**
All persons who reside in states in the United States with similar consumer protection laws, breach of express warranty laws and breach of implied warranty law, who purchased the Products from August 25, 2018, until the date of judgment in this action, for personal or household use, and not for resale or distribution purposes ("Consumer Protection Class").  Specifically excluded from this Class are Defendants; the officers, directors, or employees of Defendants; any entity in which Defendants has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants.  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the

members of his/her immediate family and judicial staff, and any juror assigned
to this action.

77. Plaintiff reserves the right to redefine the Classes and to add additional subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

78. The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product. Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Federal Rule of Civil Procedure 23. The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court. The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

79. There are questions of law and fact common to each Class for purposes of California Federal Rule of Civil Procedure 23, including whether Defendants' labels and packaging include uniform misrepresentations and omissions that misled Plaintiff and the other members of the Classes to believe the Products were "keto" and/or "keto-friendly". The members of each Class were and are similarly affected by having purchased the Product for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendants as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

80. Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Federal Rule of Civil Procedure 23. Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased that Product, which is not natural as represented. Plaintiff paid a premium for the Product, on the belief it was "keto", over similar alternatives that did not make such representations. Plaintiff and the members of each Class have thus all overpaid for the Product.

81. Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Federal Rule of Civil Procedure 23. Plaintiff has no interests antagonistic to those of other members of each respective Class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature

to represent her.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

82.     Class certification is appropriate under Federal Rule of Civil Procedure 23 because Defendants have acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.  Defendants utilize an integrated, nationwide messaging campaign that includes uniform misrepresentations that misled Plaintiff and the other members of each Class.

83.     Class certification is appropriate under California Civil Code Section 382 because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class.  Among these common questions of law and fact are:

a.   whether Defendants misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Product;

b.   whether Defendants' labeling of the Product is likely to deceive the members of each Class;

c.   whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

d.   whether Defendants represented that the Product has characteristics, benefits, uses, or qualities that it does not have;

e.   whether Defendants' acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of the Product violated the laws alleged herein;

f.   whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief; and

g.   whether Defendants were unjustly enriched by their conduct.

84.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class.  Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

85.     The injuries sustained by Plaintiff and the members of each Class flow, in each

instance, from a common nucleus of operative facts – Defendants' misconduct.

86.     Plaintiff and the members of each Class have been damaged by Defendants' misconduct.  The members of each Class have paid for a product that would not have been purchased in the absence of Defendants' deceptive scheme, or, alternatively, would have been purchased at a lesser price.

87.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned.  Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

**FIRST CAUSE OF ACTION**

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *et seq*.**

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

88.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

89.     This cause of action is brought pursuant to *Business and Professions Code* § 17200, *et seq*.

90.     In the advertising of the Product, Defendants makes false and misleading statements.  Specifically, as set forth above, Defendants represent that the Products are "keto" and/or "keto

24

friendly".

91.     In fact, the Products are not keto or "keto-friendly" because they are high in net carbohydrates, and contain the high glycemic sweeteners such as cane sugar, brown rice syrup, and tapioca syrup.

92.     Defendants are aware that the claims that they make about the Products are false, misleading and unsubstantiated.

93.     As alleged in the preceding paragraphs, the misrepresentations and omissions by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

94.     In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of California *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of California *Business & Professions Code* § 17500.

95.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

96.     All of the conduct alleged herein occurs and continues to occur in Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

97.     Pursuant to California *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Products.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

98.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

99.    This cause of action is brought pursuant to California *Business and Professions Code* § 17500, *et seq.* (known as California's False Advertising Law or "FAL").

100.    The FAL prohibits the dissemination of any advertisement which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to by untrue or misleading.  Cal. Bus. & Prof. Code §17500.

101.    In its advertising of the Products, Defendants make false and misleading statements. Specifically, as set forth above, Defendant; advertise, represent, and warranty that the Products are "keto" and/or "keto-friendly".

102.    In fact, the Products are not "keto" or "keto-friendly" because they do not contain keto-compliant sweeteners, but rather contain high carb, high glycemic sweeteners (cane sugar, brown rice syrup, and tapioca syrup) and are high in net carbs from these added sugars.

103.    As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

104.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of California *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of California *Business & Professions Code* § 17500.

105.    Pursuant to California *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Products.  Likewise,

Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.*

### (By Plaintiff and California Class against all Defendants and Does 1-10)

106.  Plaintiff repeats and realleges all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

107.  This cause of action is brought pursuant to California *Civil Code* § 1750, *et seq.*, the Consumers Legal Remedies Act.

108.  Plaintiff, as well as each member of the Consumer Class, constitutes a "consumer" within the meaning of California *Civil Code* § 1761(d).

109.  Defendants' sales of the Products constitute "transactions" within the meaning of California *Civil Code* § 1761(e).

110.  The Products purchased by Plaintiff and the Consumer Class constitute "goods" under California *Civil Code* § 1761(a).

111.  The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

112.  There are questions of law and fact common to the classes, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

a.  whether Defendants represented that the Products have characteristics, ingredients, benefits, uses or quantities which it does not have;

b.  Whether Defendants advertised the Products with the intent not to sell them as advertised

c.  The existence, extent and significance of the major misrepresentations, concealments and omissions regarding the purported characteristics of Products violate

27

FIRST AMENDED CLASS ACTION COMPLAINT

the Act; and

d. Whether Defendants knew of the existence of these misrepresentations, concealments and omissions.

113.   The policies, acts, and practices heretofore described were intended to result in the sale of the Products to the consuming public and violated and continue to violate: (1) Section 1770(a)(5) of the Act which prohibits, *inter alia,* "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" and (2) Section 1770(a)(9), which prohibits, '[a]dvertising goods or services with intent not to sell them as advertised."

114.   Defendants fraudulently deceived Plaintiff and the Classes by representing that the Products have certain characteristics, benefits, uses and qualities which it does not have.  In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Classes, specifically and not limited to the defects in the Products which caused rusting and premature failure. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Classes and depriving them of their legal rights and money.

115.   Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

116.   Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations. Plaintiff shall be irreparably harmed if such an order is not granted.

117.   Pursuant to Civil Code §1782, Plaintiff gave Defendants notice by letter dated August 25, 2022, by certified mail, of the particular violations of Civil Code § 1770.  The Notice requested that Defendants rectify the problems associated with the actions alleged in this Complaint, and give notice to all affected consumers of its intent to so act.

118.   Defendant has failed to comply and thus Plaintiff requests damages under the CLRA.

/ / /

/ / /

**<u>FOURTH CAUSE OF ACTION</u>**

**UNJUST ENRICHMENT**

**(By Plaintiff, California Class and National Class**

**Against all Defendants and Does 1-10)**

119.    Plaintiff repeats and reallege the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

120.    Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class and California Class pursuant California law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. At the core of each state's law are two fundamental elements – the defendant received a benefit from the Plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the Plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

121.    In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

122.    Pursuant to Federal Rule of Civil Procedure 8(2)(d), Plaintiff sets out the Unjust Enrichment claim as an alternative to the Breach of Express Warranty claim, *infra*, in the event that the Court determines that there is no enforceable contract between the parties. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-763 (9th Cir. 2015). Plaintiff alleges, in the alternative, that she and members of the Classes are entitled to this "quasi-contract" cause of action. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

123.    At all times relevant hereto, Defendants "enticed" keto-focused consumers like Plaintiff, as well as members of the Classes, to purchase their Products containing added simple carbs (sugars) through the false and misleading words and images on the Products' labeling and advertising. *Astiana*, 783 F.3d at 763.

124.    Plaintiff and Class members reasonably relied on Defendants deceptively labeled,

marketed, and advertised Products when making their purchasing decision.

125.   Plaintiff and members of the Classes conferred upon Defendants non-gratuitous payments for the Products that they would not have absent Defendants' deceptive labeling, advertising, and marketing.

126.   Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2014) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense.").

127.   Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Classes under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(By Plaintiff, on behalf of herself, the California Class and**

**Consumer Protection Class Against all Defendants and Does 1-10)**

128.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

129.   Plaintiff brings this Count individually under the laws of the state of California where she purchased the Product and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding express warranties).

130.   Defendants' representations, as described herein, are affirmations by Defendants that the Products are "keto" and "keto-friendly," even though the Products contain added simple carbs (sugars) which are contraindicated in the keto diet.  Specifically, Inno Foods' Coconut Keto Clusters includes two different types of added simple carbohydrates (cane sugar and brown rice sugar), and Inno Foods' Dark Chocolate Keto Nuggets includes two different types of added simple carbohydrates

(cane sugar and tapioca syrup).

131.   Defendants' representations regarding the Products are made to Plaintiff and the other members of the Classes at the point of purchase and are part of the description of the goods.  Those promises constituted express warranties and became part of the basis of the bargain, between Defendants on the one hand, and Plaintiff and the Classes on the other.

132.   In addition, or in the alternative, Defendants made each of their above-described deceptive representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendants' representations as a material factor in their decisions to purchase the Products.  Plaintiff and other members of the Classes would not have purchased the Products but for these representations and warranties.

133.   The Products did not, in fact, meet the representations Defendants made about Products, as described herein, because the added-sugar Products are not keto or "keto-friendly".

134.   Defendants breached their express warranties by supplying the Products in a condition that does not satisfy warranty obligations.

135.   At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

      a.   Alaska St. §45.02.313;

      b.   Ariz. Rev. Stat. Ann. §47-2313;

      c.   Ark. Code Ann. §4-2-313;

      d.   Cal. Com. Code §2313;

      e.   Colo. Rev. Stat. §4-2-313;

      f.   Conn. Gen. Stat. Ann. §42a-2-313;

      g.   D.C. Code §28:2-313;

      h.   Fla. Stat. §672.313;

      i.   Haw. Rev. Stat. §490:2-313;

      j.   810 Ill. Comp. Stat. 5/2-313;

      k.   Ind. Code §26-1-2-313;

      l.   Kan. Stat. Ann. §84-2-313;

m.  La. Civ. Code. Ann. art. 2520;

n.  Maine Rev. Stat. Ann. 11 §2-313;

o.  Mass. Gen. Laws Ann. 106 §2-313;

p.  Minn. Stat. Ann. §336.2-313;

q.  Miss. Code Ann. §75-2-313;

r.  Mo. Rev. Stat. §400.2-313;

s.  Mont. Code Ann. §30-2-313;

t.  Neb. Rev. Stat. §2-313;

u.  Nev. Rev. Stat. §104.2313;

v.  N.H. Rev. Stat. Ann. §382-A:2-313;

w.  N.J. Stat. Ann. §12A:2-313;

x.  N.M. Stat. Ann. §55-2-313;

y.  N.Y. U.C.C. Law §2-313;

z.  N.C. Gen. Stat. Ann. §25-2-313;

aa. Okla. Stat. Ann. tit. 12A, §2-313;

bb. Or. Rev. Stat. §72.3130;

cc. Pa. Stat. Ann. tit. 13, §2313;

dd. R.I. Gen. Laws §6A-2-313;

ee. S.C. Code Ann. §36-2-313;

ff.  S.D. Codified Laws. §57A-2-313;

gg. Tenn. Code Ann. §47-2-313;

hh. Tex. Bus. & Com. Code Ann. §2.313;

ii.  Utah Code Ann. §70A-2-313;

jj.  Vt. Stat. Ann. tit. 9A§2-313;

kk. Wash. Rev. Code §62A.2-313;

ll.  W. Va. Code §46-2-313;

mm.      Wyo. Stat. Ann. §34.1-2-313;

136.  The above statutes do not require privity of contract in order to recover for breach of express warranty.

137.  Plaintiff has complied with the warranty terms, including usage instructions. Plaintiff has made a demand upon Defendants to perform under the warranty terms, but Defendants have failed to comply with those terms.

138.  As a direct and proximate result of the breach of express warranties, Plaintiff has suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

139.  Wherefore, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF CONSUMER FRAUD LAWS
**(By Plaintiff, on Behalf of Herself, the California Class, and Consumer Protection Class against all Defendants and Does 1-100)**

140.  Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

141.  Plaintiff brings this Count individually under the laws of the state where she purchased the Product and on behalf of all other persons who purchased the Products in states having similar laws regarding consumer fraud and deceptive trade practices.

142.  Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased the Products.

143.  The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Products declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

144.  Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and

false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

  a. Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

  b. Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

  c. Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

  d. California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

  e. Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

  f. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

  g. Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

  h. District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

  i. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

  j. Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

  k. California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

  l. Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

  m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

  n. Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

  o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

  p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

  q. Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.   Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.   Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.   New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb. New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee. Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.  Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.  South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

mm.     Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

145.    The Products constitute a product to which these consumer protection laws apply.

146.    In the conduct of trade or commerce regarding its production, marketing, and sale of the Products, Defendants engaged in one or more unfair or deceptive acts or practices including, but not limited to, uniformly representing to Plaintiff and each member of the Classes that the added-sugar Products were "keto" and/or "keto-friendly."

147.    Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

148.    Defendant Costco knew, or should have known, that its representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

149.    Defendant Inno Foods knew, or should have known, that its representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

150.    Defendant Costco used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

151.    Defendant Inno Foods used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

152.    Plaintiff and the other members of the Classes did so rely.

153.    Plaintiff and the other members of the Classes purchased the Products produced by Defendants which misrepresented the characteristics and nature of The Products.

154.    Plaintiff and the other members of the Classes would not have purchased the Products but for Defendants' deceptive and unlawful acts.

155.    As a result of Defendants' conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

156.    Defendants' conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

### SEVENTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(By Plaintiff, on Behalf of Herself, and the California Class**

**against all Defendants and Does 1-10)**

157.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

158.    In making representations of fact to Plaintiff and the California Class members about the Products, Defendants failed to fulfill their duty to disclose the material facts alleged above.  Such failure to disclose on the part of Defendants amounts to negligent misrepresentation.

159.    Plaintiff and the other members of the California Class reasonably relied upon such representations and omissions to their detriment.

160.    Plaintiff and the other members of the California Class, as a direct and proximate cause of Defendants' negligent misrepresentations, reasonably relied upon such misrepresentations to their detriment.  Plaintiff and other members of the California Class suffered damages, including but not limited to, physical harm because the two varieties of added simple carbs (sugars) in each of Defendants' Products at issue are not conducive with the physical well-being of consumers striving to stay in a state of ketosis and striving to follow a ketogenic diet.

161.    By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

A.    That the Court certify the nationwide Class and the California Class and appoint Plaintiff as Class Representative and their attorneys as Class Counsel to represent the members of the Classes;

B.    That the Court declare that Defendants' conduct violates the statutes referenced herein;

C.    That the Court preliminarily and permanently enjoin Defendants from conducting their business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

D.      That the Court order Defendants to conduct a corrective advertising and information campaign advising consumers that the Products does not have the characteristics, uses, benefits, and quality Defendants have claimed;

E.      That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.      That the Court order Defendants to notify each and every individual and/or business who purchased the Products of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendants;

G.      That the Court order Defendants to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon .

H.      That the Court order Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants as a result of its acts or practices as alleged in this Complaint;

I.      That the Court award damages to Plaintiff and the Classes;

J.      The common fund doctrine, and/or any other appropriate legal theory; and

K.      that the Court grant such other and further relief as may be just and proper.

DATED:   November 28, 2022             **BRADLEY/GROMBACHER, LLP**

By：  /s/ Marcus J. Bradley
Marcus J. Bradley, Esq.
Kiley Lynn Grombacher, Esq.
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:   November 28, 2022             **BRADLEY/GROMBACHER, LLP**

By：  /s/ Marcus J. Bradley
Marcus J. Bradley, Esq.
Kiley Lynn Grombacher, Esq.
Attorneys for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT