**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL WALCOFF, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>INNOFOODS USA, INC., et al.,<br><br>Defendants. | Case No. 22-cv-1485-MMA (AHG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 11] |

In this putative class action, Plaintiff Carol Walcoff ("Plaintiff") alleges that Defendants Costco Wholesale Corporation and Inno Foods, Inc.[1] ("Defendants") misleadingly label and market certain snack products as "keto" and "keto-friendly," when, in fact, they are high in carbohydrates and added sugars—ingredients which could easily thwart someone adhering to a ketogenic diet. Doc. No. 9 (First Amended Complaint, the "FAC") ¶¶ 1, 7. On December 12, 2022, Defendants filed a motion to dismiss Plaintiffs' FAC in its entirety pursuant to Federal Rules of Civil Procedure

---

[1] Plaintiff incorrectly names Inno Foods USA, Inc. as a defendant in her FAC. *See* Doc. Nos. 9 at 2; 11-1 at 7.

12(b)(1) and 12(b)(6).  Doc. No. 11.  Plaintiff filed an opposition, Doc. No. 12, to which Defendants replied, Doc. No. 13.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 14.  For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss.

## I. BACKGROUND[2]

Plaintiff began purchasing Defendant Inno Foods, Inc.'s ("Inno") Keto Coconut Cluster and Dark Chocolate Keto Nuggets snacks (the "Products") in August 2018 from Defendant Costco Wholesale Corporation at several of its locations, including in Carlsbad, California.  FAC ¶¶ 1, 28, 76.  After consulting her doctor, who advised Plaintiff to "drastically reduce her carbohydrate intake," Plaintiff began following a ketogenic diet, which "involves heavily 'restricting the number of carbohydrates and sugar you consume.'"  *Id.* ¶¶ 20–21 (internal citation omitted).  Plaintiff alleges Inno's "labeling, advertising, and marketing campaign is false and misleading" because it touts its Products as "keto" and "keto friendly" even though they contain high net carbs and added high-carb sugars, which are not conducive to a keto diet.  *Id.* ¶¶ 7–8.  The front of the Products' packaging contains labels which state that they contain "4 g[rams] net carbs" and "3 g[rams] of sugar" per serving.[3]  *Id.* ¶ 62.  Over the last two years, Plaintiff bought over $300 worth of Defendants' Products because she believed they were "keto," meaning "no-sugar added and low carb[]."  *Id.* ¶¶ 8, 31–32.  If the Products did not contain the phrases "keto," "keto friendly," "no funny stuff," "pure," and "It's in the chocolate!" on the labels, Plaintiff would not have paid the same price and would not have been willing to purchase the Products.  *Id.*  Although Plaintiff alleges she would not

---

[2] Reviewing Defendants' motion to dismiss, the Court accepts as true all facts alleged in the FAC and construes them in the light most favorable to Plaintiff.  *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

[3] More specifically, the front label of the "Keto Coconut Cluster" product features a notice that it contains "4g net carbs per serving," while the "Dark Chocolate Keto Nuggets" product features a notice that it contains *both* "4g net carbs" and "3g sugars" per serving.  *Id.* ¶ 62.

buy Defendants' Products again if they contain "added simple carbs (sugars)" or high amounts of carbohydrates, she would be willing to purchase them in the future if they were "actually keto friendly." *Id.* ¶¶ 8, 34.

Based on the foregoing, Plaintiff initiated this action on behalf of herself and all other persons similarly situated for: (1) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count I); (2) Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* (Count II); (3) Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750 *et seq.* (Count III); (4) Unjust Enrichment (Count IV); (5) Breach of Express Warranty (Count V); (6) Violations of the Consumer Fraud Laws of various other states[4] (Count VI); and (7) Negligent Misrepresentation (Count VII). *See generally* FAC.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)[5]

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.2d at 1242. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts

---

[4] Plaintiff alleges violations of various consumer fraud laws in forty states and the District of Columbia on behalf of herself, a California Class (defined as "[a]ll person in California who purchased the Products for personal or household use . . . between August 25, 2018 until the date of judgment in this action"), and a Consumer Protection Class (defined as "[a]ll person who reside in states in the United States with similar consumer protections laws . . . who purchased the Products from August 25, 2018 until the date of judgment in this action"). FAC ¶¶ 76, 140–156.

[5] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof[]'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)). Generally, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Publ'g*, 594 F.2d at 733).

"Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White*, 227 F.3d at 1242 (citing *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996)).

**B.     Rule 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly—Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of

the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991)).

### III. REQUEST FOR JUDICIAL NOTICE

As an initial matter, Defendants asks the Court to consider two exhibits—a document from the Paleo Foundation entitled "Keto Certified Standards" (Exhibit A) and images of the labels from the Products (Exhibit B)—in support of their motion to dismiss pursuant to the judicial notice doctrine. *See* Doc. No. 11-2.

While the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Furthermore, courts may take judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) (citing *Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)); *see also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) ("The Court

also grants Defendants' request [for judicial notice] as to Exhibits 31 through 47, Yahoo! Press releases, news articles, analyst reports, and third party press releases to which the [second amended complaint] refers, but not for the truth of their contents").

Here, Plaintiff "does not oppose Defendants' [request for judicial notice] as it pertains to the Products' labels" (Exhibit B), but argues that the Court should not consider Exhibit A from the Paleo Foundation. Doc. No. 12-1 at 2.[6]

As to the undisputed exhibit, courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging. *See, e.g.*, *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1100 (N.D. Cal. 2012) ("The Court takes judicial notice of the packaging of Fruit Roll–Ups and Fruit by the Foot, examples of which were filed with the Court by General Mills."); *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, at *2 (S.D. Cal. Apr. 16, 2012) (taking notice of reproductions of the panels of two boxes of Sugar in the Raw). Accordingly, the Court **GRANTS** Defendants' request for judicial notice as to Exhibit B, which features the Products' labels.

As to the disputed exhibit, Defendant contends that Exhibit A is judicially noticeable because it is a publicly available document. *See* Doc. No. 11-2 at 2. The Court agrees and **GRANTS** Defendants' request for judicial notice as to Exhibit A. However, the Court will not consider Exhibit A for the truth of the matters asserted therein. *See, e.g.*, *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (granting defendants' request to take judicial notice of SEC filings, but specifying that they will not "where inappropriate" be considered for the truth of the matter asserted).

---

[6] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

# IV. Discussion

## A. Motion to Dismiss for Lack of Standing

Defendants argue that Plaintiff lacks standing for two primary reasons: (1) she lacks standing to bring claims based on laws of states where she does not reside, and (2) she lacks standing to seek injunctive relief. *See* Doc. No. 11-1 at 24–28. In raising their standing challenges, Defendants bring a facial attack to subject matter jurisdiction.

Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); and then citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The party invoking federal jurisdiction bears the burden to establish standing. *Id.* The Court addresses Defendants' standing challenges in turn.

### 1. Nationwide Class Claims

First, Defendants argue that Plaintiff, who resides in California, lacks standing to assert nationwide class claims. *See* Doc. No. 11-1 at 25–26. Plaintiff responds that this argument attempts to prematurely address class certification issues at the pleadings stage. *See* Doc. No. 12 at 26–29.

District courts in California are split on the issue of whether standing inquiries can be deferred until after class certification, but they note a trend that courts can address standing at the pleadings stage and dismiss claims brought under state laws that have no connection to the named plaintiff. *Soo v. Lorex Corp.*, No. 20-cv-01437-JSC, 2020 WL 5408117, at *10 (N.D. Cal. Sept. 9, 2020) ("While the Ninth Circuit has not definitively answered whether named plaintiffs have standing to pursue class claims under the common laws of states to which the named plaintiffs have no connection, district courts in this Circuit routinely hold that they do not."); *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp. 3d 906, 921 (N.D. Cal. 2015) (noting the split); *see also Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072, 1072 n.3 (S.D. Cal. 2020) (providing

examples and finding that there is a "growing trend" among California district courts to address standing at the pleading stage and dismiss claims "under the laws of states in which no plaintiff resides or has purchased products"); *Mercado v. Audi of Am., LLC*, No. ED CV18-02388 JAK (SPx), 2019 WL 9051000, at *14 (C.D. Cal. Nov. 26, 2019) ("The Ninth Circuit has not directly addressed this question in the context of multistate claims."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068 (N.D. Cal. 2015) ("Given the prevalence of nationwide class actions, it is perhaps surprising that there is no Ninth Circuit precedent specifically deciding this question.").

Plaintiff brings three causes of action on behalf of a National Class and Consumer Protection Class: violation of the consumer protection acts of "[f]orty states and the District of Columbia," breach of express warranty in thirty-nine states, and unjust enrichment in all fifty states. FAC ¶¶ 119–156. However, the named Plaintiff is only from California and does not allege that she purchased the at-issue Products in any other state. *See id.* at ¶¶ 14, 28.

This Court agrees with the growing trend that courts can "address the issue of Article III standing at the pleadings stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products." *Schertzer*, 445 F. Supp. 3d at 1072; *see also Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048-MMA-MDD, 2022 WL 2441303, at *10 (S.D. Cal. July 5, 2022) ("It is well within the Court's discretion to strike or dismiss Plaintiffs' nationwide class allegations at the pleadings stage than at class certification."). Even in circumstances where courts have found they have discretion to defer standing questions until after class certification, the standing inquiry can be addressed when plaintiffs bring claims from states where they do not have a connection. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1074, 1075; *see also Senne*, 114 F. Supp. 3d at 924 (agreeing with the reasoning of *In re Carrier IQ, Inc.*). Indeed, "[i]f a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim." *Mercado*, 2019 WL 9051000, at *15 (quoting *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF,

2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014)); *see also Soo*, 2020 WL 5408117, at *11 (quoting *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019)) (stating that standing must be shown for each claim and distinguishing the facts from *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)); *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020) (same).  The Supreme Court has insisted that "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 185).  The fact that this case is a putative class action does not excuse Plaintiff's obligation to show standing for each claim asserted.  *See Spokeo, Inc.*, 136 S. Ct. at 1547 n.6 (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'").  Plaintiff does not allege a connection to any of the jurisdictions where she does not reside or has not purchased Defendant's Products.  Therefore, the Court finds Plaintiff lacks standing to bring claims under the laws of the states where she does not reside or did not purchase the at-issue Products.

      Even if the Court found that it had discretion to defer the standing issue until after class certification, the Court would decline to exercise its discretion.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1074–75.  Plaintiff resides in only one jurisdiction, but raises claims from fifty-one jurisdictions.  The claims from fifty jurisdictions without a named Plaintiff is vast when compared to the mere seven claims from a jurisdiction with a named Plaintiff.  The Court has reservations about subjecting Defendants "to the expense and burden of nationwide discovery without Plaintiff[] first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws." *Id.* at 1074; *see also Soo*, 2020 WL 5408117, at *10; *Jones*, 400 F. Supp. 3d at 909; *cf.* Fed. R. Civ. P. 1.

Accordingly, the Court **GRANTS** Defendants' Rule 12(b)(1) motion to dismiss and **DISMISSES with leave to amend** the causes of action under the laws of states where a named Plaintiff does not reside or did not purchase the at-issue Products. If Plaintiff wishes to file a second amended complaint, the Court **DIRECTS** Plaintiff to identify the applicable state laws and separate the allegations of various state law violations into separate causes of action.

    2.    *Injunctive Relief*

Second, Defendants argue that Plaintiff lacks Article III standing to seek injunctive relief because Plaintiff has not plausibly alleged a threat of future harm. Doc. Nos. 11-1 at 26–28; 13 at 13. The Court agrees.

To establish standing for injunctive relief, a plaintiff must plead a "threat of injury" that is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Once plaintiffs have been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation omitted). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson*, 889 F.3d at 967 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "[A] previously deceived customer may have standing to seek an injunction against false advertising or labeling" based on "inability to rely on the advertising in the future," "even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 967, 969 (quoting *Summers*, 555 U.S. at 493). "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.*; *see also Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10,

2022) (applying the *Davidson* rule to omissions on labels).

At this stage of the proceedings, the Court must presume the truth of Plaintiff's allegations and construe the allegations in her favor. *See Davidson*, 889 F.3d at 971 (citing *Daniels-Hall*, 629 F.3d at 998). However, Plaintiff argues that her "allegations in the instant matter '*track* those found in Davidson, *almost exactly*.'" Doc. No. 12 at 30 (emphasis in original) (internal citations omitted). Not so. The *Davidson* court held that a plaintiff bringing consumer protection causes of action had standing to pursue injunctive relief where she adequately alleged an imminent or actual threat of future harm because the plaintiff:

> alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible"; "regularly visits stores . . . where [Kimberly–Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly–Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true.

*Davidson*, 889 F.3d at 970–71 (recognizing this conclusion was a "close question"). Here, Plaintiff's allegation that she "would be willing to purchase products from Defendants in the future so long as Defendants produced a product without added simple carbs (sugars) and low carbohydrates that was actually 'keto friendly,'" FAC ¶ 34, lacks the specificity in *Davidson* where the plaintiff there "continu[ed] to desire" the *specific product* manufactured by defendant. *Compare* FAC ¶ 34, with *Davidson*, 889 F.3d at 970–71.

In addition, Plaintiff fails to establish standing for injunctive relief because she cannot show a likelihood of further harm. Plaintiff alleges that Defendants falsely market their Products with "buzzwords" and phrases such as "keto," "keto-friendly," "no funny stuff," "pure," and "it's in the chocolate!" *See* FAC ¶¶ 60–62. However, Plaintiff "do[es] not dispute the veracity of the nutrition facts or ingredient labeling on the [P]roducts." *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal.

2021). For example, Plaintiff does not challenge the information on the front labels of each of the at-issue Products, which state that they contain "4g net carbs" and "3g sugars" per serving. *See generally* FAC. Rather, Plaintiff only complains about the marketing language found on the Products' packaging. In the future, Plaintiff can check the nutrition facts or ingredient labeling to assess if the Products contain ingredients which she believes are not conducive to her keto diet. Therefore, Plaintiff does not establish Article III standing to assert her claim for injunctive relief based on her theory of misleading "buzzword" marketing statements, such as "keto" and "keto-friendly."

Accordingly, the Court **GRANTS** Defendants' Rule 12(b)(1) motion to dismiss and **DISMISSES** Plaintiff's claim for injunctive relief **without leave to amend**.

*3.   Conclusion*

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss brought under Rule 12(b)(1).

**B.   Motion to Dismiss for Failure to State a Claim**

Defendants challenge each of Plaintiff's causes of action.[7] *See generally* Doc. No. 11-1. The Court will begin by addressing whether Plaintiff states a claim for her consumer protection causes of action.

Plaintiff's causes of action under California's consumer protection statutes are governed by the "reasonable consumer" standard. *See Williams v. Gerber Products*, 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506–07 (2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). To plead UCL and FAL claims "based on false advertising or promotional practices," a plaintiff need "'only to show that members of the public are likely to be deceived.'"

---

[7] As the Court already dismissed Plaintiff's claims to the extent they are brought under the laws of states where Plaintiff does not reside or did not purchase the Products, *see supra* § IV.A.1, the Court solely addresses Defendants' remaining arguments under California law.

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015). The same reasonable consumer standard applies to CLRA claims, *see Williams*, 552 F.3d at 938; and the analysis of a CLRA claim is essentially the same as for UCL and FAL claims. *See In reConAgra Foods, Inc.*, 90 F.Supp.3d 919, 982 (C.D. Cal. 2015) ("Courts generally consider claims under the [UCL, FAL, and CLRA] together."). "[T]hese laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).

  This Court is mindful of the Ninth Circuit's general rule that "whether a business practice is deceptive will *usually* be a question of fact not appropriate for decision on demurrer. [Emphasis added]." *Williams*, 552 F.3d at 938–39 ("The facts of this case . . . do not amount to the *rare* situation in which granting a motion to dismiss is appropriate. [Emphasis added]"). However, "usually" and "rare" do not connote "never," and there have been an ever-increasing number of cases in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label was deceptive or misleading to a reasonable consumer. *See, e.g.*, *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–31 (9th Cir. 2019); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879 (N.D. Ca. Dec. 1, 2020); *Cheslow v. Ghirardelli Chocolate Co.*, 472 F.Supp.3d 686 (N.D. Cal. 2020). Further, considering a motion to dismiss to determine whether allegations amount to a "plausible" claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 669.

  The gravamen of Plaintiff's claims in her FAC is that Defendants' Products are falsely and misleadingly labeled as "keto" and "keto-friendly" because they "are high in net carbohydrates, and contain . . . high glycemic sweeteners such as cane sugar, brown rice syrup, and tapioca syrup." *See* FAC ¶¶ 90–91, 101–102.

However, as highlighted by Defendants, the Products' front labels prominently disclose that the Products contain "4g net carbs" and "3g sugars" per serving. *See id.* ¶¶ 4, 62; Doc. No. 11-1 at 17, 19. The Ninth Circuit has stated that "*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (citing *Williams*, 552 F.3d at 939). Here, the Court finds no deceptive act to be dispelled. *See id.*

In her FAC, Plaintiff attaches photos of Defendants' Products. *See* FAC ¶¶ 4, 62. Each of these photos show in large, bold typeface the word "keto" on the front of the packaging. *See id.* However, each of the photos also clearly show the number of grams of net carbs and sugars per serving almost directly below the word "keto." *See id.* Plaintiff does not dispute the representation on the Products' labels that they contain "4g net carbs" and "3g sugars" per serving. Instead, she contends that Defendants' disclosures of the net carb and sugar content on the front of the Products "actually contribute to misleading the reasonable consumer." Doc. No. 12 at 19.

Plaintiff argues that the disclosures "lack critical clarification about the source of the '4g Net Carbs' and the '3g Sugars.'" *Id.* In addition, Plaintiff claims that "[n]owhere on the Products' packaging does Defendant Inno Foods advertise or draw attention to the truth that the '4g Net Carbs Per Serving' and '3g Sugars Per Serving' are sourced from high-carb sweeteners," such as cane sugar, brown rice sugar, and tapioca syrup. *Id.*; FAC ¶ 7. However, the ingredient list on the back of the Products—which Plaintiff does not dispute the veracity of in her FAC—clearly discloses that the Products contain the aforementioned "high-carb sweeteners."[8] Doc. No. 12 at 19. Therefore, based on

---

[8] The Court does not accept as true allegations contradicted by documents attached to or referred to in the complaint, "unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent. Ltd. V. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall*, 629 F.3d at 998); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)). The Court declines to accept

1  Plaintiff's own definitions of a ketogenic diet in her FAC,[9] if a consumer were uncertain
2  of the meaning of "keto" after seeing the net carb and sugar content listed clearly on the
3  front labels of the Products, a reasonable consumer would be aware of the nutrition facts
4  and ingredients lists on the back of the Products to clarify any uncertainty.  *See Ebner*,
5  838 F.3d at 966 (holding where there is no deception on the front label, accurate
6  information on the back of the package is sufficient to inform the reasonable consumer).
7       To the extent that Plaintiff's theory of her case rests on the premise that "4g net
8  carbs" and "3g sugars" per serving effectively makes the Products not "keto," this
9  contention is belied by Plaintiff's allegations in her FAC.  Plaintiff alleges that a "'well-
10 formulated' ketogenic diet is composed of less than 20-50 grams of net total
11 carbohydrate[s], per day."  FAC ¶¶ 22– 23, 51.  Thus, if adhering to the recommended
12 serving size on Defendants' Products, a consumer should be able to stay within the 20 to
13 50 grams of net carbs per day that Plaintiff alleges is compatible with a keto diet in her
14 FAC.  In addition, Plaintiff does not allege in her FAC that a ketogenic diet requires a
15 person to *completely* exclude from their diet sugars or what she calls "high-carb
16 sweeteners," such as cane sugar, brown rice sugar, and tapioca syrup.  Moreover, the
17 Court finds Plaintiff's expectation that the Products be "no-sugar-added" just because
18 they contain the word "keto" as part of their name, implausible.  *See* FAC ¶ 32.  Given
19 that each of the front labels on the Products gives notice of the net carbohydrate content,
20 and that Plaintiff notes that "sugars" are one of the three "different types of
21 carbohydrates," a reasonable consumer would check the back packaging to confirm
22 whether Defendants' Products are in line with their version of the keto diet and whether
23 they contain sugar.[10]  *Id.* ¶¶ 52, 62; *Ebner*, 838 F.3d at 966.  Therefore, because Plaintiff
24 does not dispute the truth of the "4g net carbs" and "3g sugars" claims on the front labels

---

unreasonable inferences or deductions of fact in the face of the contradictory packaging pictured in Plaintiff's own FAC.
[9] *See* FAC ¶¶ 6–8, 41–59.
[10] Plaintiff acknowledges in her FAC that there are different versions of a keto diet.  *See* FAC ¶¶ 46–47.

of the Products, and—based on Plaintiff's allegations in her FAC—these claims are not necessarily incompatible with a keto diet, the Court finds that Plaintiff has not demonstrated any affirmative misrepresentations which would preclude a consumer from having to consider the rear labels of the Products.

Based on the foregoing, the Court finds that Plaintiff has not pleaded any plausible claims based on misrepresentations under the applicable consumer protection laws cited above.[11]  Because Plaintiff has failed to overcome this preliminary hurdle, the Court declines to address any of Plaintiff's remaining arguments.  In addition, Plaintiff's remaining causes of action, which are based on the same labels for the at-issue Products, are defective for the same reasons.[12]  As such, the Court **GRANTS** Defendants' motion to dismiss brought under Rule 12(b)(6) **with leave to amend**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Plaintiff may file a second amended complaint on or before **June 1, 2023**.  Any second amended complaint will be the operative pleading, and therefore Defendants must respond within the time prescribed by Federal Rule of Civil Procedure 15.  Any claim not re-alleged in the second amended complaint will be considered waived.  *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir.

---

[11] Although only mentioned once in the general allegations in her FAC, *see* ¶ 62, to the extent Plaintiff also rests her claims on the following statements: "pure," "it's in the chocolate!" and "no funny stuff," the Court finds that these statements are non-actionable puffery because they "do not describe 'specific or absolute characteristics' of the [P]roduct[s], but rather involve 'generalized, vague, and unspecified assertions." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017) (quoting *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005)).  Therefore, the Court **DISMISSES** Plaintiff's claims premised on the aforementioned statements **without leave to amend**.
[12] *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186–88 (N.D. Cal. 2021) (dismissing UCL, FAL, CLRA, unjust enrichment, and negligent misrepresentation claims "because plaintiff alleges no facts showing" any misrepresentation or deception on the product's label); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1423 (1988) (an unjust enrichment claim fails if the defendant made no actionable misrepresentation); *Rice v. Sunbeam Prods., Inc.*, No. 12-cv-7923-CAS-AJWx, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) (dismissing an express warranty claim absent an "unequivocal statement" constituting a representation).

1989) ("[A]n amended pleading supersedes the original."). In addition, Plaintiff is cautioned that any future filings not compliant with Civil Local Rules 5.1 and 7.1(h) will be stricken.[13]

**IT IS SO ORDERED**.

Dated: May 4, 2023

HON. MICHAEL M. ANELLO
United States District Judge

---

[13] Plaintiff's FAC and opposition to Defendants' motion to dismiss were in a font size smaller than the 14-point standard font size required by the Court's Local Rules.